IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DONALD G. HEAVEN AND DEBRA A. LUCAS-HEAVEN, HUSBAND AND WIFE | CIVIL ACTION |
|---|---|
| v. | NO. 17-1292 |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, ET AL. | |

Baylson, J.                                                                                                                     March 28, 2018

## MEMORANDUM RE CROSS MOTIONS FOR SUMMARY JUDGMENT

In this case, we must determine whether genuine disputes of material fact preclude summary judgment on behalf of Plaintiffs, husband and wife Donald Heaven and Debra Lucas-Heaven, or Defendant, KeyBank, N.A. The Heavens initiated this suit, alleging that KeyBank, along with defendants Portfolio Recovery Associates, LLC ("PRA"), law firm Blatt, Hasenmiller, Leibsker & Moore, LLC ("BHLM"), and attorney Kami Miller violated the FDCPA and the UTPCPL, and committed fraud and conversion by unlawfully garnishing funds from a joint marital bank account in the name of both Plaintiffs, in satisfaction of a judgment against Mr. Heaven alone. For the reasons discussed below, we grant summary judgment for Defendant KeyBank in full, and deny summary judgment for Plaintiffs Donald Heaven and Debra Lucas-Heaven.

### I. UNDISPUTED FACTS

The following is a fair account of the factual assertions at issue in this case, as taken from both parties Statements of Fact and not genuinely disputed. On October 3, 2016, PRA, originally named as a Defendant in this action, obtained a judgment in its favor against Plaintiff Donald Heaven in the amount of $9,018.96 in the Bucks County Court of Common Pleas. ECF No. 38,

Def.'s Amended Mot. for Summary Judgment ("Def.'s Mot."), Def.'s Statement of Facts ("DSOF") ¶ 1. On October 11, 2016, First Niagara Bank, N.A., merged into Defendant KeyBank, N.A. Def.'s Mot., DSOF ¶ 2. As of November 1, 2016, Plaintiffs Donald and Debra co-owned a joint bank account with KeyBank ("the Account"), with account number ending 1883. Def.'s Mot., DSOF ¶ 3. The bank account did not denote the relationship between Donald and Debra as co-owners. Def.'s Mot., DSOF ¶ 3; ECF No. 50, Plaintiffs' Response to Defendant's Am. Mot. for Summary Judgment and Counter-Motion for Summary Judgment ("Pl.s' Mot."), Pl.s' Response to Def.'s Statement of Facts ("PR") ¶ 3. On November 1, 2016, Defendant law firm BHLM served a writ of execution and interrogatories on First Niagara Bank, predecessor-in-interest to Defendant KeyBank, to enforce the Judgment against Mr. Heaven. Def.'s Mot., DSOF ¶ 4.

On or about November 1, 2016, Plaintiff Debra Lucas-Heaven discovered that she was unable to access the funds in the Account. Def.'s Mot., DSOF ¶ 5; Pl.s' Mot., PR ¶ 5. On November 2, 2016, KeyBank mailed a notice to Mr. Heaven indicating that $3,761.21 of the Account funds were on hold due to the writ of execution. Def.'s Mot., DSOF ¶ 6. Included with the notice was a copy of the writ of execution, a copy of the interrogatories, and a blank exemption request form. Def.'s Mot., Exhibit 4, KeyBank Deposition Exhibit 6. On November 7, 2016 KeyBank mailed Mr. Heaven a second notice indicating that an additional $3,761.21 of the Account funds was being held due to the writ, along with additional copies of the writ, the interrogatories, and the exemption form. Def.'s Mot., DSOF ¶¶ 8-9, Exhibit 4, KeyBank Deposition Exhibit 7. Donald Heaven received both notices, and while they were not sent directly to her, Debra Lucas-Heaven did see and read the notices. Def.'s Mot., DSOF ¶ 10; Pl.s' Mot., PR ¶ 10. KeyBank filed Answers to the interrogatories with the Bucks County Court of

Common Pleas on November 14, 2016, and admitted that the Account held funds in the amount of $5,806.94 . Def.'s Mot., DSOF ¶¶ 11-12; Pl.s' Mot., PR ¶¶ 11-12. On November 15, 2016, Mr. Heaven filed a request for an exemption in Debra Heaven-Lucas's name. Def.'s Mot., DSOF ¶ 13.

On November 17, 2016, Defendant BHLM entered judgment against garnishee KeyBank in the amount of $5,806.94. Def.'s Mot., DSOF ¶ 18. On November 18, 2016, the Bucks County Court held a hearing on Mr. Heaven's request for an exemption. Def.'s Mot., DSOF ¶ 19. PRA claims that it did not receive any notice of the Exemption Hearing because the Bucks County Court sent notice by email to an incorrect address for PRA's counsel, BHLM. Def.'s Mot., DSOF ¶ 20. Neither KeyBank nor PRA appeared at the Exemption Hearing on November 18, 2016, at which Bucks County Court Judge Waite issued a Bench Order granting Mr. Heaven's request for an exemption. Def.'s Mot., DSOF ¶¶ 22-23. [1] KeyBank's business records indicate that Mrs. Lucas-Heaven called KeyBank on November 23, 2016 regarding an exemption. Def.'s Mot., DSOF ¶ 25.

By check dated November 29, 2016, KeyBank paid $5,806.94 from the Account to BHLM to discharge the judgment entered against it. Def.'s Mot., DSOF ¶ 28, Exhibit 7. On December 16, 2016, Mrs. Lucas-Heaven informed counsel for KeyBank that she had filed and was granted a claim for an exemption regarding the funds in the Account. Def.'s Mot., DSOF ¶ 29. On or after December 16, 2016 counsel for KeyBank was for the first time provided with a copy of a document indicating that the Bucks County Court had granted Mrs. Lucas-Heaven an

---

[1] The parties dispute whether or not KeyBank had notice of the Exemption Hearing. Counsel for KeyBank has served a subpoena on the Bucks County Sheriff's Office demanding production of documents and information relating to this issue. Counsel for the Heavens stated by letter to the Court on March 28, 2018, that they oppose further delay for the purpose of resolving this dispute. The Court has concluded that this issue is not material to determining KeyBank's liability under the Counts enumerated in the Complaint. As such, this dispute does not prevent the Court from ruling on the cross motions for summary judgment.

exemption. Def.'s Mot., DSOF ¶ 31. On December 22, 2016, Judge Waite of the Bucks County Court entered a written order indicating that the funds in the Account were exempt from garnishment. Def.'s Mot., DSOF ¶ 33; ECF No. 1, Complaint, Exhibit A, Entry 24. On or about December 22, 2016, the $5,806.94 that had been paid to BHLM from the Account was returned to KeyBank. Def.'s Mot., DSOF ¶ 34. On or about December 29, 2016, KeyBank returned the $5,806.94 to the Account. Def.'s Mot., DSOF ¶ 35. On or about December 31, 2016, Mrs. Heaven-Lucas became aware that the funds had been returned to the Account. Def.'s Mot., DSOF ¶ 36.

Plaintiffs have provided no documentary evidence to support their allegation that they suffered losses in the amount of $524.58 as a result of charges by their creditors while the Account funds were unavailable to Plaintiffs. Def.'s Mot., DSOF ¶¶ 37-38; Pl.s' Mot., PR ¶¶ 37-38. Plaintiffs have provided no documentary evidence to support their allegation that they were charged and that they paid the late fees they allege they incurred. Def.'s Mot., DSOF ¶ 39; Pl.s' Mot., PR ¶ 39. KeyBank credited the Account for overdraft charges imposed during the time period when the funds were removed from the Account, however KeyBank did not refund a late charge they imposed on Plaintiffs' mortgage payments in the amount of $77.00 until one month after the Complaint was filed and served. Def.'s Mot., DSOF ¶ 42; Pl.s' Mot., PR ¶ 42.

## I. PROCEDURAL BACKGROUND

The Heavens filed suit on February 16, 2017, in the Court of Common Pleas of Bucks County, alleging one count of Contempt of Court, two counts under the FDCPA, one count under the UTPCPL, one count of fraud, and one count of conversion. (ECF No. 1). Defendant BHLM, along with formerly named defendants Kami Miller and PRA, filed for removal to this Court on March 22, 2017. (ECF No. 1). BHLM, Ms. Miller, and PRA answered on March 29, 2017 and

4

asserted a crossclaim against defendant KeyBank.  (ECF No. 7).  KeyBank answered the Complaint and the Crossclaim on April 14, 2017.  (ECF No. 12).  On April 21, 2017 the parties stipulated to the dismissal of Ms. Miller as a defendant, and to the dismissal of Ms. Miller's crossclaim against KeyBank.  (ECF No. 14).  KeyBank moved for summary judgment of the Heavens' claims on August 24, 2017, and moved for summary judgment of PRA and BHLM's crossclaims on August 20, 2017.  (ECF No. 23; ECF No. 26.).  The Heavens moved to defer or deny KeyBank's motion for summary judgment on August 29, 2017, in light of an ongoing discovery dispute.  (ECF No. 24).  BHLM dismissed its Crossclaim against KeyBank on November 29, 2017.  (ECF No. 36).  The parties stipulated to the dismissal of PRA from the action on November 20, 2017.  (ECF No. 37).

KeyBank filed an amended motion for summary judgment of the Heavens' claims on November 30, 2017.  (ECF No. 38).  That same day, the Heavens' responded to KeyBank's original motion for summary judgment and filed a counter motion for summary judgment against KeyBank.  (ECF No. 41).  This response included incorrectly numbered responses to KeyBank's Statement of Undisputed Material Facts.  KeyBank replied in support of their Motion for Summary judgment on December 8, 2017 (ECF No. 42.)  The Heavens then responded additionally to KeyBank's amended motion for summary judgment on December 12, 2017, and reasserted their counter-motion for summary judgment against KeyBank.  (ECF No. 44).  KeyBank responded to the Heavens' supplement to their response and counter motion for summary judgment on December 20, 2017 (ECF No. 47.).

This Court held oral argument on all of the pending motions on February 20, 2018, at which the Court asked both parties to answer particular questions.  The Heavens submitted written answers to those questions.  On March 6, 2018 KeyBank submitted written answers to

5

those questions and to the Heavens' responses to those questions (ECF No. 52.). Following argument the Heavens filed a corrected version of their Response to KeyBank's original motion for summary judgment with properly numbered responses to KeyBank's Statement of Undisputed Material Facts, along with the Heavens' original counter motion for summary judgment against KeyBank, without the supplemental material provided on December 12, 2017 (ECF No. 50.).[2] The Heavens then filed "Plaintiffs' Reply to Defendant's, Responses and Objections to KeyBank's Responses and Objections to Plaintiffs' Second Set of Request for Admissions, KeyBank's Responses and Objections to Plaintiffs' Second Set of Interrogatories and Fourth Set of Requests for Production of Documents" on March 12, 2018 (ECF No. 53.). The relevance of this filing is unclear.

## II. LEGAL STANDARD

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,

---

[2] While this filing superseded ECF No. 44, the Heavens' more complete response to KeyBank's Amended Motion for Summary Judgment, ECF No. 38, such that the Heavens' current operative filing for the purposes of this decision does not address the supplemental material raised by KeyBank in their Amended Motion for Summary Judgment, this Court will rule on the filings as they stand in any event, because the additional material does not create a dispute about a material fact that would impact the outcome here. This supplemental material includes facts and argument regarding a particular KeyBank policy that was disclosed under seal. Because the policy is irrelevant to KeyBank's liability, we need not address it, and the Heavens' failure to include their argument regarding this policy in the operative filing does not prejudice their position.

477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, "by citing to particular parts of materials in the record" set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A). "Speculation and conclusory allegations do not satisfy [the non-moving party's] duty." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999) (superseded by statute on other grounds as recognized by P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009)). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## III. DISCUSSION

### A. Count I: Contempt of Court

Count I alleges that KeyBank was in contempt of two orders issued by Judge Waite of the Bucks County Court of Common Pleas. KeyBank has stipulated to the dismissal of Count I. It will be dismissed with prejudice.

### B. Count III: Violation of 15 U.S.C. § 1692a

The Fair Debt Collection Practices Act ("FDCPA") prohibits debt collectors from using "unfair or unconscionable means" in the course of collecting or attempting to collect debt. 15 U.S.C. § 1692f. Section 1692a(6) defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of

7

which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Heavens assert that KeyBank falls under the definition of a "debt collector" by virtue of their actions in facilitating the collection of the debt for BHLM, specifically by wrongly removing the funds from the Heavens' joint bank account. Def.'s Mot. at 39-40. KeyBank violated 1692f (1), they allege, by assisting in the collection of funds from a joint marital bank account. Id. at 40.

KeyBank argues that it does not fit the definition of a "debt collector" and therefore cannot be held liable under the FDCPA. Pl.s' Mot. at 13. The Heavens rely on the statutory language "or indirectly" as the basis for arguing that KeyBank was acting as a debt collector. Pl.s' Mot. at 38. They argue that garnishment of the Account funds constitutes indirect involvement in debt collection, though they do not cite any case law in support of this position. Id. at 38, 41. In fact, neither party cites any case law on this point. For its part, KeyBank asserts that it is "aware of no relevant case law that holds or even suggests that a garnishee acts as a 'debt collector' pursuant to the FDCPA when it simply responds to garnishment interrogatories and turns over funds pursuant to an order of execution." Def.'s Mot. at 14. Neither is this Court aware of any such case law. The natural reading of the statutory language does not include a garnishee that turns over funds in the definition of "debt collector." KeyBank is not even alleged to have been the party pursuing the collection of the Heavens' debt. Rather, KeyBank was merely in possession of the Heavens' money when a third party pursued the collection of the Heavens' debt, and responded to a lawful order by transferring that money to the third party. Because Defendant KeyBank does not fit the definition of a "debt collector," Plaintiffs' claim under the FDCPA must fail. Count III will be dismissed with prejudice.

### C. Count IV: Unfair and Deceptive Trade Practices

Count IV alleges that KeyBank violated the Pennsylvania Unfair Trade Practice and Consumer Protection Law ("UTPCPL") by making false and misleading representations, specifically, misrepresenting that the Heavens' joint account was available to satisfy the judgment against Mr. Heaven, and by wrongfully distributing the Account funds.

The UTPCPL makes unlawful an extensive litany of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3. The statute creates a private cause of action for a defined class of "consumers": "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property…" 73 P.S. § 201-9.2. KeyBank argues that Plaintiffs are not "consumers" under the UTPCPL and therefore cannot pursue this cause of action. Def.'s Mot. at 15-16. The Heavens argue that because they purchased a mortgage for their home through KeyBank, because they entrust their wages to an account with KeyBank, and because the Account is used for personal expenditures, they are "consumers" entitled to bring a UTPCPL action. Pl.s' Mot. at 41-42.

The language of the statute appears not to include the Heavens in its definition of a "consumer" who is eligible to pursue a UTPCPL claim. While their mortgage may be "primarily for personal, family or household purposes," and their account may hold money used for personal purposes, the Heavens did not "suffer[] any ascertainable loss of money or property" <u>as a result of</u> the purchase of their mortgage or the deposit of funds into a KeyBank account, as required by the statutory language "and thereby suffers" a loss. The funds were removed from the Account in response to the garnishment proceeding initiated by PRA. There is no evidence that the garnishment proceeding was in any way related to the Heavens' purchase of a mortgage

9

from KeyBank, or of the Heavens' choice to open a personal account with KeyBank . While this Court is not aware of any case law directly on this point, the statutory language is quite clear that there must be a connection between the purchase of goods or services and the loss being pursued. Based on this reading, the Heavens do not qualify as "consumers" of KeyBank for the purposes of bringing a private cause of action under the UTPCPL.

Even assuming that the Heavens are "consumers" entitled to pursue a UTPCPL claim against KeyBank, their claim would still fail. There is no evidence that KeyBank engaged in any fraudulent or deceptive conduct prohibited by the UTPCPL. KeyBank forwarded all of the documentation relating to the garnishment action to Mr. Heaven in a timely manner, including forms on which Mr. Heaven could file for any potential exemptions from the action. It is undisputed that KeyBank was complying with a lawful writ and judgment against the bank, ordering it to turn over the funds in the Account to BHLM, when it did so on November 29, 2016. It is undisputed that KeyBank was provided for the first time with documentation indicating that the Account was subject to an exemption on December 16, 2016, eighteen days after the Account funds were disbursed. The Heavens have not alleged that KeyBank was under a duty pursuant to the UTPCPL to affirmatively determine whether the Account was subject to an exemption before responding to the garnishment action, nor is this Court aware of any case law that says as much. Nor is there any evidence of any other "unfair" or "deceptive" conduct by KeyBank. There is no evidence that KeyBank made any misrepresentations or other false communications to the Heavens.

Plaintiffs provide no case law in support of their theory that they are "consumers" under the UTPCPL, and no case law in support of their assertion that KeyBank engaged in deceptive or fraudulent conduct; rather, they cite to two cases which review the UTPCPL generally but do not

10

relate specifically to the facts at hand.  There is no evidence on the record to sustain the Heavens' assertions that KeyBank engaged in any unfair or deceptive conduct violative of the UTPCPL.  Count IV will be dismissed with prejudice.

### D. Count V: Fraud

Count V alleges that KeyBank committed common law fraud by silence.  KeyBank argues that the Heavens' allegations are too thin to survive the heightened pleading standard for a fraud claim pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.  Def.'s Mot. at 26-27.  That rule is designed to increase notice, however, and its reach is limited to the pleading stage.  Because we are at the Summary Judgment stage, KeyBank's argument about Rule 9(b) is misplaced.

The elements of a fraud claim under Pennsylvania law are as follows: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."  Gruenwald v. Advanced Computer Applications, Inc., 730 A.2d 1004, 1014 (Pa. Super. 1999); see also, Overall v. University of Pa., 412 F.3d 492, 498 (3d Cir. 2005).  The Heavens allege that KeyBank engaged in common law fraud "by silence."  An affirmative misrepresentation is not necessary for a fraud claim, rather, "fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture. It is any artifice by which a person is deceived to his disadvantage."  Smith v. Renaut, 564 A.2d 188, 192 (Pa. Super. 1989) (internal citations omitted).  A failure to disclose some information in light of a duty to do so

also constitutes fraud, however, "mere silence is not sufficient in the absence of a duty to speak." Id.

There is no evidence that KeyBank had a duty to disclose any information that it did not disclose, resulting in the Heavens' disadvantage. In the month leading up to disbursement of funds from the Account KeyBank mailed various documents to Mr. Heaven, including two notices that the Account funds were subject to a writ of execution, copies of the writ, copies of interrogatories related to the writ, and blank exemption forms. While these documents were not addressed to Mrs. Heaven, there is no evidence that KeyBank had any duty to send them directly to her. Moreover there is evidence that Mrs. Heaven did receive and have an opportunity to review the documents. There is no evidence in the record that KeyBank withheld any information that it had a specific duty to turn over to the Heavens.

While there is some dispute between the parties regarding when and how frequently Mrs. Heaven attempted to discuss the garnishment proceeding with KeyBank , and the extent to which she was rebuffed in those efforts, the facts underlying this particular dispute are not material to KeyBank's liability under the Fraud claim. Without evidence of each a specific duty to speak, the failure to do so, and the Plaintiffs' being deceived as a result, this claim cannot be proven. Again, there is no evidence of KeyBank failing to comply with a duty to speak on a particular issue or to share particular information. There is no evidence that KeyBank had a duty to speak with Mrs. Heaven regarding the garnishment proceeding at all. Even if the Heavens could establish that KeyBank refused to speak with Mrs. Heaven about the garnishment proceeding, and that that refusal did constitute a violation of some duty, there is simply no evidence that Mrs. Heaven was deceived. As KeyBank points out, the fact that the Heavens took immediate steps to seek an exemption when they received notice that the Account was subject to garnishment

12

proceedings is evidence that they were not deceived or confused about the situation. The Heavens understood the garnishment process and responded appropriately by filing for an exemption for the Account.

Without evidence that KeyBank was under any duty to speak, there can be no proof of fraud by silence. Count V will be dismissed with prejudice.

### E. Count VI: Conversion

Count VI alleges that KeyBank committed conversion. The Heavens allege that KeyBank participated with BHLM and Ms. Miller to deprive them of their money by wrongfully taking it from the Account without the Heavens' consent or any other lawful justification. They highlight their Claim for Exemption as evidence that they did not consent to the taking. Pl.s' Mot. at 49. KeyBank urges that it was complying with a lawful writ of execution when it transferred the funds from the Account to BHLM, and that the bank therefore had lawful justification. Def.'s Mot. at 28.

Under Pennsylvania law conversion is "the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification." PTSI, Inc. v. Haley, 71 A.3d 304, 314 (Pa. Super. 2013) (quoting McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 659 n. 3 (Pa. Super. 2000)). A party will be found liable for conversion for "unreasonably withholding possession from one who has the right to it." PTSI, Inc., 71 A.3d at 314 (quoting Martin v. National Sur. Corp., 262 A.2d 672, 675 (Pa. Super. 1970)). As laid out in the Second Restatement of Torts, the actor's good faith, the extent of the interference, and the resulting harm are all factors in determining liability. PTSI, Inc., 71 A.3d at 314 (citing Restatement (2d) of Torts).

13

The evidence clearly establishes that KeyBank was not acting unreasonably and that it acted with lawful justification when it disbursed the Account funds. KeyBank responded accurately to interrogatories associated with a writ of execution against funds in the Account. BHLM entered judgment against KeyBank for the funds based on those responses. KeyBank was fulfilling its own legal obligation under the writ of execution and the judgment against it when it turned the Account funds over to BHLM. At the time, KeyBank had not been provided with documentation clarifying that there was an exemption in place sparing the Account funds from the judgment. KeyBank acted in good faith when it disbursed the funds in response to the judgment. This action resulted in a very short interference with the Heavens' right to their money, lasting only one month. The money was returned in full after one month. Finally, there is no evidence that this interference with the Heavens' property rights to their money caused any lasting damage, as the Heavens have not put forth evidence to establish claimed losses associated with a timeshare.

KeyBank cannot be said to have disbursed funds from the Heavens' account without lawful justification. KeyBank did not unreasonably withhold possession of the Heavens' money from them. Count VI will be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, KeyBank's Motion for Summary Judgment (ECF No. 38) is granted in full. The Heavens' Counter Motion for Summary Judgment (ECF No. 50) is denied.

O:\CIVIL 17\17-1292 Heaven v Portfolio Recovery\17cv1292 Memorandum on MSJ.docx